**UNITED STATES of America, Plaintiff,**

v.

**ACB SALES & SERVICE, INC. et al., Defendants.**

**Civ. No. 80–251 PHX CLH.**

United States District Court, D. Arizona.

June 19, 1984.

A. Melvin McDonald, U.S. Atty., James P. Loss, Asst. U.S. Atty., Phoenix, Ariz., Vicki G. Golden, Anita Johnson, Civil Div., U.S. Dept. of Justice, Washington, D.C., for plaintiff.

Warren C. Ridge, Ladendorff & Ridge, Phoenix, Ariz., and Basil J. Mezines, Jacob A. Stein, Michael G. Charapp, Stein, Mitchell & Mezines, Washington, D.C., for defendants.

## MEMORANDUM OPINION AND ORDER

HARDY, District Judge.

Acting upon notification and authorization to the Attorney General by the Federal Trade Commission (FTC), the United States filed this civil action for penalties under sections 5($l$) and 5(m)(1)(A) of the Federal Trade Commission Act, 15 U.S.C. §§ 45($l$), 45(m)(1)(A) (Supp.1984), against fourteen corporations, collectively known as the ACB Companies, and Jerry Middleman, Jack J. Schwartz, and Jerry Raker, individually and as directors of the ACB Companies. The complaint alleges that the debt collections practices of the defendants violated an FTC consent order and the Fair Debt Collections Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.* (1982). The Government has moved for summary judgment concerning 723 alleged violations, and the defendants ACB Sales & Service, Inc., ACB Management Services, Inc., Jerry Middleman, Jack J. Schwartz, and Jerry Raker have filed a cross-motion for summary judgment. For the reasons stated below, the motions of the Government and the defendants will both be granted in part.

## I. FACTS

During the early 1970s, Jerry Middleman, Jack J. Schwartz, and Jerry Raker directed no less than thirteen corporations engaged in the business of debt collection in the nation's largest cities. On December

4, 1974, the FTC filed an administrative complaint against these thirteen corporations[1] and against Middleman, Schwartz, and Raker, individually and as directors of the corporations, alleging that the debt collection practices of the respondents constituted "unfair and deceptive acts and practices in commerce in violation of section 5 of the Federal Trade Commission Act." The respondents consented to a cease and desist order (the Order) issued by the FTC, which was simultaneously filed with the administrative complaint and became final and effective on March 7, 1975, 60 days after its issuance. The Order prohibits twelve collections practices, eight of which are relevant to this action:

## ORDER

IT IS ORDERED that respondents ... do forthwith cease and desist from:

. . . .

2. Representing, directly or by implication, orally or in writing, contrary to fact, that legal action has been, is being or will be taken against a debtor.

3. Representing, directly or by implication, orally or in writing, contrary to fact or law, that failure by any debtor to pay amounts requested will result in garnishment of wages or attachment of property of debtor; or misrepresenting, in any way, the remedies available to the respondents or to creditors or the defenses available to debtors in the jurisdiction in which collection is sought.

5. Representing, directly or by implication, orally or in writing, that failure by debtors to pay the amounts requested will result in criminal action by law enforcement authorities.

6. Placing telephone calls to any alleged debtor at his place of employment or appearing in person at any alleged debtor's place of employment; provided, however, that nothing herein shall pro-

hibit any contact with the debtor at his place of employment before such debtor has requested orally or in writing, that no telephone calls or personal visits be made to him at his place of employment, where respondents have been totally unable after having exercised available lawful means, to a reasonable extent, to contact an alleged debtor by telephone or in person at his residence or elsewhere.

7. Representing, directly or by implication, orally or in writing, that any of respondents' employees are government officials, law enforcement officers or agents of businesses other than debt collection; misrepresenting to any debtor, in any manner, the position or function of any of respondents' agents or employees.

8. Placing of any telephone calls to any debtor between the hours, in the time zone of the debtor, of 9:00 o'clock P.M. and 8:00 o'clock A.M. on weekdays, including Saturdays, and between the hours of 9:00 o'clock P.M. and 11:00 o'clock A.M. on Sundays, without first receiving permission from such debtor to call during those hours.

IT IS FURTHER ORDERED that respondents, their successors and assigns, with respect to communications to persons other than the alleged debtor, cease and desist from:

a. Communicating or threatening to communicate or implying the fact or existence of any debt to a debtor's employer prior to any judgment, unless specifically called for by or necessary to a procedure prescribed by statutes.

b. Communicating with or threatening to communicate or implying the fact or existence of any debt to any other third parties, including former employers, other than one who might be reasonably expected to be liable

---

1. These corporations are: American Credit Bureau, Inc.; American Credit Bureau of Nevada, Inc.; American Credit Bureau of Tucson, Inc.; American Creditors Bureau of Dallas, Inc.; American Creditors Bureau of Houston, Inc.; American Creditors Bureau of Philadelphia, Inc.; American Creditors Bureau of Colorado, Inc.; American Collections, Inc.; American Collections, Inc. of Georgia; Doctor's Business Bureau; Lusk Collection Agency; Affiliated Creditors Bureau, Inc.; and Jemama Investment Company, Inc.

therefore, except with the written permission of the debtor.

. . . .

On May 1, 1976, Middleman, Schwartz, and Raker effected a major reorganization of their debt collection businesses. Several new corporations were formed, and others were dissolved. ACB Sales & Service, Inc., became the parent corporation for the remaining defendant corporations:

ACB Management Services, Inc.

American Creditors Bureau, Inc.

Jemama Investment Company, Inc., doing business as American Creditors Bureau of San Diego

American Creditors Bureau of San Francisco

American Creditors Bureau of Los Angeles

Affiliated Creditors Bureau, Inc.

American Creditors Bureau of Houston, Inc.

American Creditors Bureau of Dallas, Inc.

American Creditors Bureau of Philadelphia, Inc.

American Creditors Bureau of Colorado, Inc.

American Creditors Bureau of New York, Inc.

American Creditors Bureau of Florida, Inc.

American Creditors Bureau of Ohio, Inc.

American Creditors Bureau of Boston, Inc.

American Creditors Bureau of Georgia, Inc.

Middleman and Schwartz are officers and directors of all of the ACB Companies; Raker is an officer and director of each company except ACB Management Services. Middleman's primary responsibility is management of ACB Management Services, and Raker's primary responsibility is the management of ACB Sales & Service. Due to poor health, Schwartz' responsibility is limited to long-range planning for the ACB Companies. Together, these individuals occupy the highest management levels of the reorganized ACB Companies.

ACB Sales & Service and ACB Management Services together form the "home office" of the ACB Companies. ACB Sales & Service, in addition to serving as the parent corporation, enters into contractual relations with creditors for debt collection services. ACB Management provides management, accounting, purchasing and administrative services for the local ACB collection agencies. When a creditor refers a debt to ACB Sales & Service for collection, ACB Management Services creates a debtor account with any specific collection instructions of the creditor and sends the account in a document known as a debtor jacket to one of the local agencies for collections activity.

The collections activity by the local agencies includes correspondence with the debtor through form letters prepared by the home office and telephone calls by an individual collector. Failing to collect the debt, the collector may recommend to his office manager that legal action be taken to recover on the debt. If the office manager concurs, the account is referred to the home office for further consideration. If the home office agrees that legal action would be cost effective, ACB Sales & Service requests written authorization to sue from the creditor. Upon receipt of the authorization, the matter is referred to an attorney.

Since the Order became final, the ACB Companies have used three form letters in their collections activities:

1. Letter 003

### 48 HOUR NOTICE

TAKE NOTICE ... That your creditor alleges that you are justly indebted in the amount listed with us for collection. Further we have been authorized to proceed with any necessary lawful action to effect such collection. Therefore, you have <u>48 Hours</u> in which to pay the amount indicated above.

### TIME IS OF THE ESSENCE!

IF YOU REMIT WITHIN <u>48 HOURS</u> NO ACTION WILL BE TAKEN

## 2. Letter 005

Your account has been referred to my desk for processing. In a percentage of cases referred to us, we find it necessary to resort to legal proceedings through attorneys and the civil courts.

If this account is referred to counsel, and he determines that suit should be filed against you, it may result in the recovery of a judgment which may pursuant to law, include not only the amount of your indebtedness, but in addition, the amount of any statutory costs, legal interest, and where applicable, reasonable attorney's fees.

If the judgment is not thereon satisfied, it may be collected by attachment of and execution upon your real and personal property. Garnishment is also an available remedy to satisfy an unsatisfied judgment.

We, therefore, suggest two alternatives:

1. Bring or send this balance personally by return mail.

2. Come to this office personally to see me and make arrangements for the satisfaction of this account.

We are not representing either directly or by implication that legal action has been or is being taken against you at this time.

We would appreciate hearing from you or your attorney within the next forty-eight (48) hours.

3. Letter 006 (identical to Letter 005 in all respects except the penultimate paragraph)

---

**2.** The debtors who received letters 003 or 005 are listed along with the local ACB agency that sent them in Part I of the Appendix that accompanies this memorandum opinion and order. The defendants have challenged the Government's allegations with respect to a number of debtors by noting that the debtor's file either does not indicate that letters were mailed or does indicate that the collector involved recommended legal action. With respect to these debtors, a material question of fact is present and, accordingly, they have been excluded from the list.

**3.** These debtors who received letters 003 or 005 are listed in Part II of the Appendix. The defendants have challenged the Government's allegations with respect to several debtors of Inter-

---

We do not mean to represent directly or indirectly that legal action has been, is being, or will be taken against you. We would, however, prefer that the money which is due be paid without necessity of further processing by us.

In a number of instances, individual collectors of the local ACB Companies have sent these letters to debtors without initiating the internal procedures necessary to file a law suit and without ever subsequently instituting a law suit against the debtor.[2] Under the same circumstances, these letters were sent to debtors of La Salle Extension University, International Correspondence School, and Northridge Hospital, even though these creditors instructed that no legal action be threatened or taken against their debtors.[3]

After consenting to the Order, the reorganized ACB Companies adopted procedures designed to insure that individual collectors and the local ACB Companies do not violate the Order. These procedures include training each collector in lawful collection techniques, providing each collector with a copy of the FTC order, and requiring each collector to sign a statement indicating that he understands and agrees to abide by the ACB collections policies and rules for professional conduct. Despite the adoption of these procedures by the ACB Companies, the collections practices of a number of collectors have violated ACB's rules for professional conduct.[4] Once

---

national Correspondence School by noting that the debtors' files do not indicate that either letter was mailed. With respect to these debtors, a question of material fact is present and, therefore, these debtors have been excluded from the list. Furthermore, the Government has failed to identify which local ACB Agencies sent these letters. For the purposes of this motion, this question of fact prevents the imposition of liability upon any local ACB Company for violations caused by these letters.

**4.** These collectors, their debtors, and a summary of the collections practices involved are listed in Part III of the Appendix. This list is limited to those collectors whose conduct is an undisputed fact. See text accompanying note 8, *infra.*

these violations were discovered, the local agencies fired these "maverick collectors."

## II.  SUMMARY JUDGMENT

The FDCPA took effect on March 20, 1978, approximately three years after the Consent Order of the FTC became final. In prohibiting unfair and deceptive practices by debt collectors, the FDCPA lists as violations specific practices which are similar to, if not the same as, many of the prohibitions of the Order. As a result, the Government frequently alleges that the conduct attributed to the defendants simultaneously violated the Order and the FDCPA. Because this case brings together parallel prosecutions, the Government's motion for summary judgment raises two important preliminary issues: first, in a motion for summary judgment concerning violations of an FTC order, what are the questions of law and fact and, second, does the distinction between questions of law and fact, if any, apply equally in a motion for summary judgment concerning violations of the FDCPA?

### A.  *Questions of Law and Fact*

■■■ The determination whether a defendant violated an order of the FTC involves a two-step process: first, the terms of the order must be defined and, second, it must be determined whether the defendant's conduct violated the order as construed. *United States v. Reader's Digest Association, Inc.,* 662 F.2d 955, 960 (3d Cir.1981); *United States v. J.B. Williams Company, Inc.,* 498 F.2d 414, 430–31 (2d Cir.1974). The interpretation of an FTC order is purely a question of law and therefore exclusively within the province of the court. *Id.* The issue whether the defendant's conduct violated an order as construed, however, is a mixed question of law and fact that has created a sharp conflict between the Second and Third Circuits concerning the proper role of the district court in deciding this issue, particularly in a motion for summary judgment.

In *United States v. J.B. Williams Company, Inc., supra,* the Government sought to recover civil penalties under section 5(*l*) of the Federal Trade Commission Act, 15 U.S.C. § 45(*l*), alleging that representations in the defendant's television commercials violated a cease and desist order. The district court concluded that

> Once the Commission establishes that a cease and desist order is in effect and that a particular advertisement has been disseminated which allegedly violates that order, it is for the court to determine as a matter of law whether the oral and/or visual content of challenged advertisement falls within the scope of the prohibitions in the order.

*Williams,* 498 F.2d at 431. Summary judgment was entered in favor of the Government, and the Second Circuit Court of Appeals reversed on all but two counts, noting "when the meaning or effect of words or acts is fairly disputed, the question is for the trier of facts, to be decided after hearing all material evidence." *Id.* Earlier in the same opinion, the Court of Appeals also held that section 5(*l*) invokes a jury trial right, recognizing the general rule that "there is a right of jury trial when the United States sues ... to collect a penalty, even though the statute is silent on the right of jury trial." *Id.* at 422–23 (quoting 5 J. Moore, *Moore's Federal Practice* ¶ 38.–31[1], at 232–33 (1971 ed.)). Thus, the Second Circuit's position may be summarized as being that the determination whether the defendant violated an FTC order is ultimately a question of fact which must be reserved for trial to a jury unless there is no reasonable dispute as to the meaning of the defendant's conduct and the fact of a violation.

Relying heavily upon the dissent of Judge Oakes to the Second Circuit's *Williams* decision, the Third Circuit concluded in *United States v. Reader's Digest Association, Inc., supra,* that "the question of whether [the defendant's conduct] violated the terms of the consent was a question of law capable of decision on a motion for summary judgment." *Reader's Digest,* 662 F.2d at 964. The Third Circuit's analysis departs significantly from that of the

Second Circuit in *Williams*. In the Second Circuit's view, the determination whether the defendant violated a consent order is ultimately a question of fact simply because it is a question that a jury can competently decide. *Williams*, 498 F.2d at 431. But regardless of whether this question is resolved by a judge or a jury, plenary trial would be required in any event because the defendant has a "right to a full evidentiary hearing on all genuine issues of material fact." *Id.* at 430 n. 19. In the Third Circuit's view, the policies underlying the Federal Trade Commission Act compel an interpretation of section 5(*l*) that permits expedited enforcement of FTC orders. The Third Circuit's analysis achieves this result by dealing directly with the key safeguard of Federal Rule of Civil Procedure 56: the distinction between questions of law and fact. Rejecting "the assertion in *Williams* that the question of whether a consent order has been violated is the type of question that has been traditionally decided by juries," the court in *Reader's Digest* characterized this determination as a question of law. *Reader's Digest*, 662 F.2d at 963–64. This ruling thereby opens the way for district courts in a motion for summary judgment to rule as a matter of law under rule 56 that the consent order was or was not violated.

■ I cannot accept the Third Circuit's view that the policies underlying the Federal Trade Commission Act require that section 5(*l*) be interpreted so as to curtail a defendant's plenary trial right; the thorough reading of the legislative history of the Act offered in the *Williams* majority opinion and Judge Oakes' dissent fails to yield any decisive evidence of Congress' intent to affect the jury trial right or the standards for granting summary judgment under rule 56. Regardless of whether a judge or jury decides it, the determination whether a defendant violated an FTC order should be deemed a question of fact. To be sure, this determination requires the application of a legal standard to a number of underlying facts, but it is no more entangled with legal considerations than the determination whether a defendant was negli-

gent. Therefore, it is best reserved for the trier of fact and to this extent I am in agreement with the Second Circuit.

■ The posture of this case, however, leads me to disagree with the Second Circuit concerning the significance of the jury trial question upon the standards for granting summary judgment under rule 56. Neither the defendants or the Government have requested a jury trial and, thus, this right, if it exists under section 5(*l*), has been waived. In my view, the fact that this is a nonjury trial does affect, albeit in small measure, the plenary trial right that the defendant would enjoy were this a jury trial case. As the Fifth Circuit has recognized, "a federal district court may nevertheless grant summary judgment on such an issue [of fact], in a nonjury case, if the '*evidentiary* facts are not disputed ... [and] trial would not enhance [the court's] ability to draw inferences and conclusions,'" *Houston North Hospital Properties v. Telco Leasing, Inc.*, 680 F.2d 19, 22, *rehearing denied*, 688 F.2d 408 (5th Cir. 1982) (quoting *Nunez v. Superior Oil Co.*, 572 F.2d 1119, 1124 (5th Cir.1978)); *see also* Schwarzer, J., *Summary Judgment under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 476–80 (1984). I agree with those courts that have concluded that the propriety of summary judgment in a nonjury case should rest less upon the at times purely semantic distinction between questions of law and fact and more upon the question of whether a full evidentiary hearing would serve any real purpose. If the underlying evidentiary facts are undisputed and, thus, full trial would serve only the purpose of supplanting affidavits and transcripts with live testimony, then resolving the ultimate factual issue in a motion for summary judgment is appropriate. *Id.; but see Williams*, 498 F.2d at 430 n. 19; *cf. West v. Costen*, 558 F.Supp. 564, 574 (W.D.Va. 1983).

### B. *Violations of the FDCPA*

■ The same two-step process applied with respect to violations of an FTC order

should also be observed when determining whether a defendant violated the FDCPA. First, the court must interpret this statute, if necessary. Second, the determination whether the defendant violated the FDCPA must be resolved by the trier of fact. Since the parties have waived any jury trial right, the same standards for resolving the issue whether the defendants violated the Order in a motion for summary judgment will apply equally with regard to the issue whether the defendants violated the FDCPA. *But cf. Costen*, 558 F.Supp. at 574.

### III.  VIOLATIONS BY INDIVIDUAL COLLECTORS

#### A.  *Letter Violations*

The Government alleges that the three form letters 003, 005, and 006 threaten legal action and the ACB Companies mailed these letters to debtors without intending to bring any legal action against them. The Government concludes that the ACB Companies violated the second paragraph of the Order, which prohibits the respondents from "[r]epresenting directly or by implication, orally or in writing, contrary to fact, that legal action has been, is being or will be taken against the debtor" and violated section 807(5) of the FDCPA, 15 U.S.C. § 1692e(5), which prohibits "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken."

The first inquiry is what each of these prohibitions means. There is little if any ambiguity in section 807(5). This provision is violated if, when the threat of legal action is made, the speaker does not intend to carry out his threat. Although the wording of paragraph 2 is different, I interpret this provision similarly.

Paragraph 2 prohibits representations that legal action will be taken when "contrary to fact." In oral argument, the Government contended that legal action would not be intended unless, after sending the letter, ACB Sales & Service requests

authorization to sue from the creditor. I find the Government's interpretation untenable. It is unreasonable to suggest that the intent behind a representation be determined by a decision made not by the collector who sends the letter but by the home office perhaps weeks after the representation was made. The only reasonable interpretation of paragraph 2 is that offered by the defendants, which is that a violation occurs when the individual collector does not intend to bring a legal action yet sends the letter to the debtor.

Both section 807(5) and paragraph 2 would retain some ambiguity if a distinction were not made between intending to sue and merely wanting to sue. Under both provisions, the intent to sue clearly rests with the collector who requests that the letter be sent to the debtor. The collector's intent to sue entails more than merely wanting to sue; it follows from the decision that legal action would be cost effective and, therefore, would likely be the final course of action if the debt is not paid. Absent this conscious decision by the collector prior to sending one of the letters, he would not have the requisite intention to take legal action.

The second inquiry is whether the collector's conduct violated section 807(5) and paragraph 2 of the Order. Specifically, two issues must be resolved in this inquiry: first, do the form letters threaten legal action and, second, did the collector who sent the letter intend to take legal action against the debtor?

#### 1.  The Meaning of the Form Letters

■ The question of what each of these form letters means is clearly a question of fact, but it is a question of ultimate fact. There is no dispute concerning the underlying evidentiary facts necessary to make the determination of what the letters mean. The defendants have not offered by affidavit or transcript any competent evidence that would assist in the interpretation of the letters.[5] Full trial on this issue, there-

---

**5.**  In their response to the Government's motion,

the defendants suggest that they can prove by

fore, would not serve any purpose other than to formalize evidence concerning facts which are undisputed in this motion for summary judgment. Accordingly, I conclude that this issue may be resolved in this motion for summary judgment.

Letter 003 clearly threatens legal action against the debtor. This threat is communicated both by the form of the letter, a 48 hour notice telling the debtor that he must act immediately, and the statement that the ACB agency is "authorized to proceed with any necessary lawful action." The defendants object to this interpretation, noting that the message threatens any necessary "lawful action" rather than "legal action." Because of the context of the notice, however, this distinction would not be apparent to the average debtor. The clear impression of the notice is that the agency will file a law suit if the debt is not paid within 48 hours.

Even though there is no express threat of legal action, Letter 005 implies that legal action will be taken against the debtor if the debt is not paid. The implication that a suit will be filed is found in the letter's reference to the fact that law suits are filed in an unspecified "percentage of cases" and that, if suit were filed against the debtor, costs well beyond the amount of the debt might result. These references might be interpreted only as a statement of the legal rights of the creditor were it not for the penultimate paragraph of the letter. This paragraph disclaims that legal action "has been or is being taken" against the debtor. By omitting any expression as to his future intentions, the collector implies that a law suit is the contemplated course of action if the debt remains unpaid.

■ Letter 006 cures the deficiency of Letter 005. The penultimate paragraph is modified to state that the letter does not "represent directly or indirectly that legal action has been, is being, or will be taken against [the debtor]." Also the paragraph concludes with the comment that the agency "would prefer that the money which is due be paid without necessity of further processing." This disclaimer that the collector implies any intent to bring suit strikes a proper balance to the earlier portion of the letter describing the creditor's legal rights. I conclude that in light of the disclaimer the average debtor could not reasonably interpret the letter as threatening suit. Letter 006, therefore, cannot serve as the basis for a violation of section 807(5) or paragraph 2 of the Order.

### 2. The Intention of the Collector

The Government argues that three types of evidence establish as an undisputed fact that the collector did not intend to bring legal action against the debtors who received one of the form letters. First, the individual collector after sending the letter did not initiate the internal procedure to procure authorization to sue by recommending to his office manager that suit be brought against the debtor. Second, the ACB Companies did not request authorization from the creditors to sue these debtors. Indeed, as to those debtors of La Salle Extension University, International Correspondence School and Northridge Hospital, the debtor jacket instructed the individual collector that legal action could not be threatened or brought against the debtor. Finally, the ACB Companies did not file suit against any of the debtors who received the letters.

expert testimony that the average consumer would not understand these letters to threaten legal action against them. The defendants have not offered affidavits or other evidence in support of this contention. Even assuming that such testimony could be procured, I do not believe that it would be admissible. See Fed.R. Evid. 702. "There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelli-

gently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." Fed.R.Evid. 702 advisory committee note (quoting Ladd, *Expert Testimony*, 5 Vand.L.Rev. 414, 418 (1952). The interpretation of these letters, a matter of common sense, does not call for expert testimony. Therefore, the defendants have failed to create any question of fact material to the interpretation of the form letters.

■ Because it is the collector's intent when the letter was sent that determines the violation, the most probative evidence is the fact that the collector did not initiate the internal procedure necessary to get authorization to sue the debtor after sending the letter. There is no reason to believe that a collector considered legal action to be both feasible and the ultimate course of action if he never recommended to his office manager that suit be brought. With the exception of only a few isolated mailings, the defendants have failed to challenge this evidence and failed to produce any rebutting evidence concerning the collectors' intent.[6] I conclude, therefore, that with respect to most of the mailings of form letters 003 and 005 it is an undisputed fact that the collectors did not intend to bring legal action when the letters were sent to the debtors. These mailings, consequently, violated paragraph 2 of the Order and section 807(5) of the FDCPA.[7]

B. *Telephone Communication Violations*

■ The bulk of the alleged violations of the Order and the FDCPA are based upon specific representations or other conduct by individual collectors during telephone conversations with debtors. In most cases, the debtor has testified as to the alias of the collector and recalled specific statements made by the collector in an effort to coerce the debtor to pay the debt. In a number of cases, the defendants contest the debtor's version of the facts, offering affidavits of the collector who handled the debtor's account declaring that the alleged statements were not made. In other cases, the defendants have offered affidavits of the office manager declaring that the collector was properly trained and agreed to abide by ACB's collection policy and that he has no knowledge that the collector ever violated ACB's collection policies. The conflict between these affidavits of the Government and the defendants creates a genuine need to assess the credibility and demeanor of these affiants. Trial, therefore, is necessary and the Government's motion for summary judgment as to these violations must be denied.

■ With regard to the collection practices toward fourteen debtors, however, the defendants have not denied that the alleged representations and other conduct occurred. Instead, the defendants have offered only the response that the collectors involved with these debtors' accounts have been fired for violations of ACB collections policies. The affidavits of the debtors shifted the burden to the defendants to come forward with specific controverting evidence. *See Doff v. Brunswick Corporation*, 372 F.2d 801, 805 (9th Cir.1967). The defendants clearly have not done so here; their response, if anything, confirms the Government's assertions. Therefore, the Government is entitled to summary judgment that these "maverick collectors," those collectors who were subsequently fired by the local ACB agencies, violated the FDCPA and/or the Order.[8]

## IV. LIABILITY OF THE DEFENDANTS FOR VIOLATIONS OF THE ORDER AND THE FDCPA

The next task is to determine whether the defendants may be held liable for the violations of the Order and the FDCPA by the individual collectors. This is an issue of secondary liability. Offering a number of related legal theories, the Government argues that the defendants should be held responsible for the collectors' violations. It should be noted that the defendants have moved for summary judgment on this issue

---

6. In several instances, the defendants have noted that the debtor file, contrary to the Government's allegations, does indicate that the collector recommended legal action after sending the letter. Because this creates a question of fact concerning the collector's intent, these mailings have been excluded from the list in Parts I and II of the Appendix.

7. These violations are listed in Parts I and II of the Appendix.

8. These violations are listed in Part III of the Appendix.

of secondary liability. The defendants contend that as a matter of law they cannot be held liable for violations of the Order or the FDCPA that they did not directly commit.

## A. Liability for Violations of the Order

■■ There is no question that the local ACB agencies that are respondents and that employed the individual collectors who violated the Order are liable under the doctrine of respondeat superior.[9] When applying section 5(*l*) of the Federal Trade Commission Act, "the courts take the view that the principal is bound by the acts of the salesperson he chooses to employ, if within the actual or apparent scope of his authority, even *when unauthorized." Goodman v. F.T.C.*, 244 F.2d 584, 592 (9th Cir.1957) (emphasis in the original); *See Standard Distributors, Inc. v. F.T.C.*, 211 F.2d 7, 13 (2d Cir.1951). The individual collectors as employees are agents of their local ACB Companies. All of the violations, even those which violated the ACB Companies' collections policies, were within the apparent authority of the collectors because they were done in an effort to collect debts on behalf of the local ACB agencies.

■■ The defendants attempt to counter the imposition of liability with two arguments: first, the doctrine of respondeat superior has no application when punitive damages are to be applied and, second, the good faith efforts of the ACB Companies to prevent violations of the Order are a valid defense. Under the case law concerning enforcement of FTC orders, however, these arguments are of no avail. The doctrine of respondeat superior remains a viable basis for holding an employer responsible for violations of an order, notwithstanding the fact that the civil penalties are punitive and do not compensate the victims of the violations. The wealth of

cases applying this doctrine is sufficient to establish this point. *See, e.g., Goodman,* 244 F.2d 584; *Standard Distributors, Inc.,* 211 F.2d 7. The good faith efforts of defendant are not a defense to liability for violations of an order. *United States v. Johnson,* 541 F.2d 710, 712 (8th Cir.1976). Rather, they are simply one consideration in the determination of the amount of the civil penalty to be imposed. *See United States v. Papercraft Corporation,* 540 F.2d 131, 141 (3d Cir.1976).

■■ The defendants Middleman, Schwartz, and Raker argue that they should not be found liable because they did not personally engage in the activities which violated the Order and those who did violate the Order were not their agents. In so arguing, these defendants rely upon basic principles of tort and agency law. Generally, "a corporate executive will not be held vicariously liable, merely by virtue of his office, for the torts of his corporation." *Murphy Tugboat Company, Ltd. v. Shipowners & Merchants Towboat Co., Ltd.,* 467 F.Supp. 841, 852 (N.D.Cal.1979), *aff'd,* 658 F.2d 1256, 1257 (9th Cir.1981), *cert. denied,* 455 U.S. 1018, 102 S.Ct. 1713, 72 L.Ed.2d 135 (1982). "Personal liability must be founded upon specific acts by the individual director or officer." *Id.*

■■ Liability for violation of an FTC order under section 5(*l*), however, may extend further than the basic principles of tort and agency law would otherwise permit. *See Standard Distributors, Inc.,* 211 F.2d at 13; *cf. P.F. Collier & Son Corporation v. F.T.C.,* 427 F.2d 261, 271 (5th Cir.1971). A director/owner of a closely held corporation may be included in the order, exposing him to personal liability for violations by the corporation's employees, if he is "in charge and control of the affairs of respondent corporation." *F.T.C. v.*

9. These respondent corporations are: American Credit Bureau, Inc.; American Credit Bureau of Philadelphia, Inc.; Affiliated Creditor's Bureau, Inc.; American Creditors Bureau of Houston, Inc.; American Creditors Bureau of Dallas, Inc.; American Collections Bureau of Georgia, Inc.; American Creditors Bureau of Colorado, Inc.; and Jemama Investment Company, Inc. Even

though not named in the FTC complaint, American Creditors Bureau of New York, Inc. will also be deemed a respondent because it is a successor corporation to respondent, American Collections, Inc., and the Order at paragraph 8 is directed to "the respondents, their successors and assigns."

*Standard Education Society*, 302 U.S. 112, 119, 58 S.Ct. 113, 116, 82 L.Ed. 141 (1937); *Standard Distributors, Inc.*, 211 F.2d at 13; *Goodman*, 244 F.2d at 592. In this case, the Order states that Middleman, Schwartz and Raker "formulate, control, and direct the actions and practices of the respondent corporations." Therefore, it cannot be controverted that prior to issuance of the Order, Middleman, Schwartz and Raker had sufficient responsibility for the actions of the respondent corporations to be liable for any violations of the Order by employees of the ACB Companies. These defendants did not challenge the propriety of their inclusion in the Order when it was first issued. The Order consequently is now final and enforceable. *See F.T.C. v. Jantzen, Inc.*, 383 F.2d 981, 983 (9th Cir.1967); *United States v. Vitasafe Corporation*, 212 F.Supp. 397, 398 (S.D.N.Y. 1962), 234 F.Supp. 710 (1964), *aff'd*, 352 F.2d 62 (1965).

Absent some change in circumstances after issuance of an FTC order, a director named as a respondent in the order will be liable for any violations. *See United States v. Johnson*, 541 F.2d at 712–13; *United States v. Bestline Products Corporation*, 412 F.Supp. 754, 763 (N.D.Cal. 1976). The defendants' statement of facts and their response to that of the Government indicates that the management positions that Middleman and Raker occupy within the ACB Companies remains essentially unchanged since the Order was issued.[10] For this reason, there is no question of fact concerning their liability for the violations of the employees of the ACB Companies they direct.

The defendants have contended, however, that since the Order was issued, defendant Schwartz has suffered from poor health, forcing him to limit his role in the ACB Companies. This raises the factual question of whether he continues to exercise sufficient control and participation in the ACB Companies to hold him responsible for violations by ACB employees. The Court, therefore, will grant summary judgment only as to the liability of defendants Middleman and Raker for violations of the Order.

The Government also seeks to hold ACB Sales & Service and ACB Management Services liable for violations of the Order. ACB Sales & Service and ACB Management Services are not respondents to the Order. The Government contends that these corporations nevertheless are responsible for violations by the local ACB companies under the theory that the ACB Companies comprise a single enterprise.

■■■ A parent corporation may be liable for violations of an FTC order by its subsidiary, notwithstanding the fact that the parent and subsidiary are legally separate entities. *See Deena Artware, Inc. v. N.L.R.B.*, 361 U.S. 398, 403, 80 S.Ct. 441, 443, 4 L.Ed.2d 400 (1960); *cf. P.F. Collier & Son Corporation*, 427 F.2d at 266–273. Under common law, the separation between corporate entities will not be disregarded absent special circumstances showing that the corporations should be deemed a single economic enterprise. *See Deena Artware*, 361 U.S. at 403, 80 S.Ct. at 443; *Steven v. Roscoe Turner Aeronautical Corporation*, 324 F.2d 157, 160–61 (7th Cir.1963); *Murphy*, 467 F.Supp. at 854. The actions of a subsidiary may be attributed to the parent corporation where the subsidiary is "merely an instrumentality of the parent, indicated by such facts as inadequate capitalization, absence of independent activity, action in the interest of the parent rather than the subsidiary, and failure to observe the legal requirements of separate corporate existence." *Murphy*, 467 F.Supp. at 854.

■■■ The ACB Companies are clearly one economic enterprise engaged in the

---

**10.** After the Order was issued, the ACB Companies hired John Fogelman to serve as an officer in charge of compliance with the order and the FDCPA. The hiring of Fogelman does not alter the responsibility of Middleman or Raker for these violations. There has been no suggestion that it changed their responsibilities or control over the ACB Companies. The hiring of Fogelman, thus, will be considered as a good faith effort to prevent violations and a factor in the determination of the amount of the civil penalty.

business of debt collections on a nation-wide scale. This fact is established both by the ACB Companies' appearance to the public and the actual interdependent relationship between them. The letterhead and logo of each ACB company indicates that it is "an ACB collection agency." The ACB Companies refer to ACB Sales & Service and ACB Management Services as the "home office" and to the local ACB agencies as "branches". The ACB Companies are managed by an interlocking directorate consisting of Middleman, Schwartz, and Raker. ACB Sales & Service solicits clients and depends upon ACB Management Services and the local ACB agencies to fulfill its commitment to collect debts on behalf of the client. ACB Management Services provides vital support services to the local ACB Agencies. Specifically, ACB Management Services prepared the form letters that violated the Order and the FDCPA and issued directives, in the form of "branch operations" memoranda, to the local ACB companies concerning compliance with the Order and the FDCPA. Only the local ACB agencies perform debt collection services involving direct contact with a debtor, but they do so through the support and at the direction of ACB Sales & Service and ACB Management Services. In view of the interdependency of the ACB Companies, I conclude that it is fair and reasonable to hold ACB Sales & Service and ACB Management Service liable for violations of the Order.

### B. *Liability for Violations of the FDCPA*

■ The FDCPA is enforced as a FTC rule under section 5(m)(1)(A) of the Federal Trade Commission Act. 15 U.S.C. § 1692*l* I find no distinction between enforcement of orders under section 5(1) and enforcement of the FDCPA under section 5(m)(1)(A) that would limit the application of the doctrine of respondeat superior.[11] Thus, for the same reasons previously provided, those local ACB agencies whose employees violated the FDCPA are liable for those violations. *See Costen*, 558 F.Supp. at 573.

■ I conclude, however, that defendants Middleman, Schwartz, and Raker cannot be held liable for violations of the FDCPA. The Government's arguments assume that if corporate directors may be held individually liable under section 5(*l*) for violations of FTC orders then they also may be held liable for violations of the FDCPA under 5(m)(1)(A). This assumption, however, is faulty. The individual defendants may be held liable for violations of the Order because they were validly included as respondents to the Order. In contrast, liability under the FDCPA must rest upon the principles of liability under the common law of tort and agency. *See, e.g., Costen*, 558 F.Supp. 564. As discussed above, a corporate director may be held liable only for violations in which he materially participates. *See Murphy*, 467 F.Supp. at 852. In this case, the Government does not allege that the individual defendants actually participated in any of the violations and, therefore, as a matter of law they cannot be held liable.[12]

■ The Government predicates the liability of ACB Management Services and

**11.** Section 5(m)(1)(A) differs from section 5(*l*) insofar as 5(m)(1)(A) permits civil penalties only when the defendant violates an FTC rule "with actual knowledge or knowledge fairly implied on the basis of objective circumstances that such act is unfair or deceptive and is prohibited by such rule." 15 U.S.C. § 45(m)(1)(A). The defendants have not argued that this additional element poses an obstacle to their liability in this case. I read section 5(m)(1)(A) to require only that the defendant or its agent have some knowledge, actual or constructive, of the requirements of the FDCPA such that it can be concluded that the defendant or its agent knew or should have known that his conduct was unlawful. By the defendants' admission, their collectors were well instructed concerning the FDCPA. This special requirement of 5(m)(1)(A), therefore, is met by the undisputed facts of this case.

**12.** The Government has not argued that the Court should "pierce the corporate veil" in an effort to impose liability upon the individual defendants. *See Costen*, 558 F.Supp. at 585–87. This doctrine, therefore, does not enter into the analysis of this issue.

ACB Sales & Service upon the single enterprise theory. To establish the liability of these corporations for the violations of the FDCPA by the local ACB Companies, however, the Government must also prove that ACB Sales & Service and ACB Management Services are debt collectors within the meaning of that term as used in the FDCPA. *Costen,* 558 F.Supp. at 573. "The term 'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). For essentially the same reason that the ACB Companies are a single entity engaged in debt collection services, ACB Sales & Service and ACB Management Services are also debt collectors. Although only the local ACB Companies perform the sort of pressure tactics which are commonly thought of as debt collection activity, ACB Sales & Service and ACB Management Services direct debtor accounts to the local ACB Companies for these collection services and provide other essential support services. Consequently, ACB Sales & Services and ACB Management Services, albeit indirectly, are debt collectors under the FDCPA and, therefore, are liable for all violations of the FDCPA committed by the local ACB Companies. *Cf. Costen,* 558 F.Supp. at 584; *Bingham v. Collection Bureau Inc.,* 505 F.Supp. 864, 871 (D.N.D.1981).

## V. THE CONSTITUTIONALITY OF THE FDCPA

The defendants contend that the FDCPA is unconstitutional because it denies independent debt collection agencies equal protection of the laws as required by the Due Process Clause of the fifth amendment. *See Bolling v. Sharpe,* 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954). The defendants' specific contention is that the FDCPA unfairly discriminates against independent debt collectors insofar as other debt collectors, such as the actual creditor or his lawyer, are not regulated by the Act. The narrow breadth of the FDCPA, however, does not rise to the level of a constitutional violation. The FDCPA is a form of economic legislation. It does not create suspect classifications or restrict fundamental rights protected by the Constitution. Consequently, the appropriate standard of review of this legislation is whether the legislation bears a rational relationship to a legitimate governmental purpose. *See San Antonio Independent School District v. Rodriquez,* 411 U.S. 1, 40, 93 S.Ct. 1278, 1300, 36 L.Ed.2d 16 (1973). The legislative history of the FDCPA indicates that Congress found that independent debt collectors are "the prime source of egregious collection practices." S.Rep. No. 95–382, 95th Cong., 1st Sess., *reprinted in* 1977–2 U.S.Code Cong. & Ad.News 1695, 1696. While independent collectors "comprise only a small segment of the collection industry," Congress found that incentives available only to independent collectors, such as payment on a commission basis, encourages independent collectors to use particularly sharp collections practices. *Id.* Congress, therefore, had a rational basis for regulating only independent collectors conducting business in interstate commerce and the FDCPA is constitutional.

IT IS ORDERED granting the Government's motion for summary judgment concerning

1. The liability of American Credit Bureau, Inc., American Credit Bureau of Philadelphia, Inc., Affiliated Creditors Bureau, Inc., American Credit Bureau of Houston, Inc., American Credit Bureau of Dallas, American Collection Bureau of Georgia, Inc., American Credit Bureau of Colorado, Inc., Jemama Investment Company, Inc., American Credit Bureau of New York for those violations of the Order that are attributed to them and listed in the Appendix;

2. The liability of ACB Sales & Service, Inc., ACB Management Services, Inc., Jerry Middleman, and Jerry Raker for each of the violations of

the Order that are listed in the Appendix;

3. The liability of American Creditors Bureau, Inc., Jemama Investment Company, Inc., Affiliated Creditors Bureau, Inc., American Creditors Bureau of Houston, Inc., American Creditors Bureau of Dallas, Inc., American Creditors Bureau of Philadelphia, American Creditors Bureau of Colorado, Inc., American Creditors Bureau of New York, Inc., American Creditor's Bureau of Florida, Inc., American Creditors Bureau of Ohio, Inc., American Creditors Bureau of Boston, Inc., American Collection Bureau of Georgia, Inc. for those violations of the FDCPA that are attributed to them and listed in the Appendix; and

4. The liability of ACB Sales & Service, Inc. and ACB Management Services, Inc. for each of the violations of the FDCPA that are listed in the Appendix

and denying the Government's motion concerning all other alleged violations of the Order and the FDCPA.

IT IS FURTHER ORDERED granting the motion for summary judgment of defendants Middleman, Schwartz and Raker concerning their alleged liability for violations of the FDCPA and denying the defendants' motion in all other respects.

## APPENDIX

I. Debtors Who Received Form Letters 003 and 005

### ACB of Philadelphia

| Letter 003 | | Letter 005 | |
|---|---|---|---|
| J. Guiney | D. Freyman | J. Johnson | H. Adderley |
| J. Johnson | R. Freund | T. Abraham | J. Bennett |
| S. Long | J. Adams, Jr. | J. Adams, Jr. | J. Bennett |
| J. McMinn | S. Schmale | K. Abaido | E. Hobbs |
| E. Adams | R. Westfield | W. Benefield | E. Hobel |
| K. Abaido | J. Westerman | R. Adams | C. Juancito |
| W. Benefield | B. West | G. Benish | B. Kilgore |
| C. Benjamin | M. Rayburn | C. Benjamin | J. Benatti |
| T. Adams, Jr. | C. Mason | T. Adams, Jr. | R. French |
| T. Adams | J. Markle | T. Adams | R. Freund |
| H. Adderley | R. Farrelly | P. Adams | C. Frey |
| E. Hobbs | C. Fallin | | |
| E. Hobel | C. Dykes, Jr. | | |
| C. Juancito | E. Barnes | | |
| B. Kilgore | L. Andrews | | |
| J. Benatti | | | |

### American Creditors Bureau (Phoenix)

| Letter 003 | | Letter 005 | |
|---|---|---|---|
| A. Everett | J. Acedo, Jr. | A. Everett | J. Acedo, Jr. |
| D. Hoag | B. Fowler | L. Parker | B. Fowler |
| W. Hollon | D. Robert | | |
| V. Penaskovic | J. Redina | | |

### Affiliated Creditors Bureau (Chicago)

| Letter 003 | | Letter 005 | |
|---|---|---|---|
| G. Nicheles | R. Martinez | M. Shujath | S. Whitney |
| E. Nilson | C. Fountain | R. Reeves | E. White |

| | | | |
|---|---|---|---|
| J. Fitch | G. Estrada | D. Richardson | R. Martinez |
| R. Reeves | D. Estell | C. Fountain | M. Flett |
| E. White | S. Ellis | P. Fleming | J. Fitch |
| D. Richardson | J. Ashby | G. Estrada | D. Estell |
| L. Ellis | D. Andrews | S. Ellis | L. Ellis |
| R. Elliot | R. Anderson | R. Elliot | C. Elam |
| C. Elam | J. Egilske | D. Edwards | R. Ball |
| R. Ball | J. Baker | J. Balazs | R. Ayers |
| J. Balazs | R. Ayers | J. Ashby | R. Anderson |
| D. Wieczorkowski | | A. Hixson | R. Randall |
| | | R. Radford | M. Evans |
| | | J. Egilske | D. Wieczorkowski |

## ACB of Houston

| Letter 003 | | Letter 005 | |
|---|---|---|---|
| D. Whitehead | M. Garza | D. Whitehead | P. White |
| C. White | A. Marcia | C. White | L. Aquilar |
| L. Aquilar | T. Smith | | |

## ACB of Dallas

| Letter 003 | | Letter 005 | |
|---|---|---|---|
| T. Reed | M. Ratley | T. Reed | J. Rainey |
| J. Rainey | D. Flowers | D. Flowers | A. Barba |
| G. Ellison | J. Hood | J. Hood | M. Kennedy |
| | | M. Salomon | R. Smith |
| | | J. Trenthardt | I. Compton |

## ACB of Georgia

| Letter 003 | | Letter 005 | |
|---|---|---|---|
| L. Brantley | J. Marshall | K. Marshall | R. Bailey |
| J. Joyner | H. Foreman | | |
| C. West | F. Echols | | |
| D. Richardson | P. Barbee | | |
| K. Marshall | | | |

## ACB of Colorado

| Letter 003 | Letter 005 |
|---|---|
| E. Currey | E. Currey |

## ACB of New York

| Letter 003 | | Letter 005 |
|---|---|---|
| E. Berger | R. Guss | D. Tavarls |
| E. Spellacy | D. Tavarls | |
| A. Wexler | | |

## ACB of Florida

| Letter 003 | | Letter 005 | |
|---|---|---|---|
| O. White | D. Whilden | F. Gomez | M. Williams |
| | | V. Sattler | L. Westbrook |
| | | A. Eden | M. Baker |

## ACB of Ohio

**Letter 003**

| | |
|---|---|
| J. Artri | T. Johnson, Jr. |
| A. Louis | C. Matelo |
| R. McDaris | J. Thompson |

**Letter 005**

| | |
|---|---|
| J. Artri | C. Coates |
| A. Louis | A. Mercado |
| L. Picard | J. Thompson |

## ACB of Boston

**Letter 003**

| | |
|---|---|
| J. Bale | P. Carley |
| D. Cyarnecki | A. Gutierrey |
| P. King | R. Einarson |
| R. Fitzpatrick, Jr. | |

**Letter 005**

| | |
|---|---|
| C. Christie | R. Lewis |
| E. McKerman | P. O'Kula |
| R. Fitzpatrick, Jr. | |

## Jemama Investment Co.

### ACB of San Diego

**Letter 003**

J. Evans, Jr.

### ACB of San Francisco

**Letter 003**

| | |
|---|---|
| S. Bain | S. Burton |
| P. Glenn | T. Hoelling |
| S. Hogan | W. House |
| L. Stevenson | M. Vargas |
| H. Walker | B. White |
| T. Rearick | A. Ray |
| R. Johnson | J. Johnson |
| W. Nauer | M. Nitzberg |
| C. Portz | L. Stapler |
| D. Richardson | M. Marrufo |
| J. Estes | R. Emert |
| J. Eber | J. Barnhill |
| J. Adams | |

**Letter 005**

| | |
|---|---|
| S. Arizqueta | K. Sullivan |
| D. Tilley | D. Darrah |
| J. Gahan | M. Vargas |
| S. Hogan | H. Walker |
| W. House | G. Wold |
| J. Johnson | D. Woods |
| W. Nauer | T. Rearick |
| L. Michaud | A. Ray |
| J. Patterson | D. Richardson |
| C. Portz | M. Marrufo |
| C. Rothman | J. Estes |
| S. Simon | R. Emert |
| L. Spenser | J. Eber |
| L. Stapler | L. Stevenson |
| J. Barnhill | J. Adams |

### ACB of Los Angeles

**Letter 003**

| | |
|---|---|
| M. Dowd | M. Green |
| V. Harding | A. Giacalone |
| J. Hicks | J. George |
| M. Javier | M. Oscar |
| E. Keathley | T. Orey |
| L. Neal | D. Newman |
| R. Pate, III | E. Mullen |
| W. Patrick | V. Mounts |
| G. Verrastro | R. Moreno |
| F. Wight | K. Martin |
| L. White | M. Margolis |
| F. White | E. Mack |
| A. Welty | E. McKinnon |
| L. Edwards | M. Lublin |

**Letter 005**

| | |
|---|---|
| G. Conward | V. Mounts |
| M. Down | R. Moreno |
| G. Harding | W. Martin |
| K. Roberts | K. Martin |
| C. Rodriquez | M. Margolis |
| G. Verrastro | E. Mack |
| L. White | E. McKinnon |
| F. White | A. Purvis |
| D. Whitcher | G. Robinson |
| L. Edwards | M. Roll |
| S. Elia | D. Rowe |
| P. Elm | S. Solender |
| J. Helsop | J. Stasiefski |
| D. Herington | W. Fermin |

S. Elias
P. Elm
J. Heslop
M. Herrera
D. Herington
R. Hacia
G. Edwards

G. Robinson
M. Roll
D. Rowe
P. Scoma
S. Solender
J. Stasiefski
K. Barrett

R. Hacia
M. Greent
R. Gomez
A. Giacalone
T. Orey
E. Mullen

G. Edwards
K. Barrett
I. Barajas
J. George
D. Newman

II. Debtors of LaSalle Extension University, International Correspondence School and Northridge Hospital Who Received Letters 003 and 005

## LaSalle Extension University

Letter 003

A. Welty
B. West
C. West
J. Westerman
R. Westfield
D. Whilden
D. Wieczorkowski

F. White
L. White
D. Whitehead
B. Whitfield
S. Schmale
E. White

Letter 005

L. Westbrook
J. Westerman
R. Westfield
R. Wetzel
B. Wheeler
V. Sattler
S. Schmale
A. Hixson
J. Friday
D. Wieczorkowski

P. White
D. Whitehead
B. Whitfield
S. Whitney
D. Whitcher
C. White
E. White
F. White
L. White

## International Correspondence School

Letter 005

J. Adams
D. Andrews
O. Bacon
R. Ball
K. Barrett
M. Marrufo
C. Mason
A. Ray
R. Reeves
G. Edwards
L. Ellis
D. Estell
C. Fallin
P. Fleming

L. Aquilar
L. Andrews
R. Bailey
A. Barba
C. Dykes, Jr.
K. Marshall
R. Radford
M. Rayburn
D. Richardson
J. Egilske
S. Ellis
J. Estes
R. Farrelly
D. Flowers

R. Allen
J. Ashby
M. Baker
E. Barnes
J. Eber
P. Martin
J. Rainey
J. Raye
A. Eden
C. Elam
G. Ellison
G. Estrada
W. Fermin
C. Fountain

R. Anderson
R. Ayers
J. Balazs
J. Barnhill
J. Markle
R. Martinez
R. Randall
T. Reed
D. Edwards
R. Elliott
R. Emert
M. Evans
J. Fitch
B. Fowler

## Northridge Hospital

Letter 003

L. Edwards
M. Herrera
R. Hacia
R. Gomez
J. George
T. Orey
E. Mullen
R. Moreno
M. Margolis
M. Lublin
D. Rowe

J. Heslop
D. Herington
M. Green
A. Giacalone
M. Oscar
D. Newman
V. Mounts
K. Martin
E. Mack
M. Roll
P. Scoma

Letter 005

L. Edwards
V. Mounts
P. Elm
J. Heslop
D. Herington
R. Hacia
M. Green
R. Gomez
A. Giacalone
J. George
M. Oscar
H. Orrante
T. Orey

S. Elias
R. Moreno
W. Martin
K. Martin
M. Margolis
E. Mack
E. McKinnon
M. Lublin
A. Purvis
M. Roll
D. Rowe
S. Solender
D. Newman

III. Violations of the Order or the FDCPA by Maverick Collectors

1. Calling at inconvenient time—before 8:00 AM after 9:00 PM (§ 805(a)(1) of FDCPA and ¶ 8 of Order)

| Debtor | ACB Co. / Collector |
|---|---|
| J. Lopez | Florida / M. Dramis |
| T. & J. Esquibel | Colorado / R. Quintana |

2. Calling at inconvenient time—debtor requested collector not to call (§ 805(a)(1) and ¶ 8)

| Debtor | ACB Co. / Collector |
|---|---|
| O. Lopez | Florida / M. Dramis |

3. Calling at inconvenient place—debtor requested collector not to call at work (§ 805(a)(1) and ¶ 8)

| Debtor | ACB Co. / Collector |
|---|---|
| D. Smith | Florida / J. Vilanueva |
| B. Nauer | San Francisco / K. Scott |
| W. McLaughlin | New York / A. Kilpatrick |

4. Calling after debtor represented by attorney (§ 805(a)(2))

| Debtor | ACB Co. / Collector |
|---|---|
| D. Sanchez | Colorado / R. Quintana |

5. Communication of fact of debt to third party (§ 805(b) and ¶ A or B)

| Debtor | ACB Co. / Collector |
|---|---|
| O. Lopez | Florida / M. Dramis |
| B. Giesey | Colorado / R. Quintana |

6. Calling after written notification to cease communication with debtor (§ 805(c))

| Debtor | ACB Co. / Collector |
|---|---|
| D. Smith | Florida / J. Vilanueva |

7. Abusive calls (§ 806)

| Debtor | ACB Co. / Collector |
|---|---|
| A. London | Florida / J. Vilanueva, S. Collins |
| D. Smith | Florida / J. Vilanueva |
| S. Simon | San Francisco / N. Roche |
| W. McLaughlin | New York / A. Kilpatrick |

8. Threats of violence (§ 806(1))

| Debtor | ACB Co. / Collector |
|---|---|
| O. Lopez | Florida / M. Dramis |

9. Obscene language (§ 806(2))

| Debtor | ACB Co. / Collector |
|---|---|
| J. Lopez | Florida / M. Dramis |
| O. Lopez | Florida / M. Dramis |
| A. London | Florida / J. Vilanueva, S. Collins |
| T. Esquibel | Colorado / R. Quintana |
| J. Esquibel | Colorado / R. Quintana |
| B. Giesey | Colorado / R. Quintana |
| M. Healy | Colorado / M. Warden |
| V. Healy | Colorado / M. Warden |

10. Repeated calling (§ 806(5))

| Debtor | ACB Co. / Collector |
|---|---|
| O. Lopez | Florida / M. Dramis |
| W. Nauer | San Francisco / K. Scott |
| J. Esquibel | Colorado / R. Quintana |

11. Threat of arrest or imprisonment (§ 807(3) and ¶ 7)

| Debtor | ACB Co. / Collector |
|---|---|
| J. Lopez | Florida / M. Dramis |
| A. London | Florida / J. Vilanueva, S. Collins |
| J. Esquibel | Colorado / R. Quintana |
| D. Sanchez | Colorado / R. Quintana |

12. Threat of garnishment of wages (§ 807(4) and ¶ 3)

| Debtor | ACB Co. / Collector |
|---|---|
| W. Nauer | San Francisco / K. Scott |
| R. Gardner | San Francisco / K. Norbutt |
| S. Simon | San Francisco / N. Roche |
| W. McLaughlin | New York / A. Kilpatrick |
| T. Esquibel | Colorado / R. Quintana |
| D. Garcia | Colorado / R. Quintana |
| V. Healy | Colorado / M. Warden |

13. Threat of attachment of property (§ 807(4) and ¶ 3)

| Debtor | ACB Co. / Collector |
|---|---|
| R. Gardner | San Francisco / K. Norbutt |
| B. Giesey | Colorado / R. Quintana |
| M. Healy | Colorado / M. Warden |
| V. Healy | Colorado / M. Warden |
| D. Sanchez | Colorado / R. Quintana |

14. Threat of legal action (§ 807(5) and ¶ 2)

| Debtor | ACB Co. / Collector |
|---|---|
| S. Simon | San Francisco / N. Roche |
| W. McLaughlin | New York / A. Kilpatrick |
| D. Garcia | Colorado / R. Quintana |
| B. Giesey | Colorado / R. Quintana |
| M. Healy | Colorado / M. Warden |
| L. Pacheco | Colorado / R. Quintana |
| D. Sanchez | Colorado / R. Quintana |
| B. Nauer | San Francisco / K. Scott |

15. Misrepresentation of identity of caller or nature of call (§ 807(10) and ¶ 7)

| Debtor | ACB Co. / Collector |
|---|---|
| W. McLaughlin | New York / A. Kilpatrick |
| D. Sanchez | Colorado / R. Quintana |

16. Acceptance of postdated checks (§ 808(2))

| Debtor | ACB Co. / Collector |
|---|---|
| A. London | Florida / J. Vilanueva, S. Collins |

17. Solicitation of postdated checks (§ 808(3))

| Debtor | ACB Co. / Collector |
|---|---|
| J. Lopez | Florida / M. Dramis |
| A. London | Florida / J. Vilanueva, S. Collins |

18. Deposit of postdated checks (§ 808(4))

| Debtor | ACB Co. / Collector |
|---|---|
| J. Lopez | Florida / M. Dramis |
| A. London | Florida / J. Vilanueva, S. Collins |